UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA M. MOORE,<br><br>                    Plaintiff,<br><br>        vs.<br><br>ROBIN HOUWMAN, KARL THOENNES,<br>ALISON NELSON, MINNEHAHA<br>COUNTY, JASON KOISTINEN, TRACI<br>SMITH, NICOLE PHILLIPS,<br>LUKE LAWTON, ELISE RASMUSSEN,<br>and DAN HAGGAR,<br><br>                    Defendants. | 4:25-CV-04026-KES<br><br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR LEAVE TO PROCEED<br>IN FORMA PAUPERIS AND<br>§ 1915 SCREENING, DISMISSING<br>ALL CLAIMS |

Plaintiff, Joshua M. Moore, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 against defendants Judge Robin Houwman, Magistrate Judge Alison Nelson, Karl Thoennes, Jason Koistinen, Traci Smith, Nicole Philips, Luke Lawton, Elise Rasmussen, Dan Haggar, and Minnehaha County, alleging they each violated his Sixth Amendment rights. Docket 10 at 1-4; *see also* Docket 15. He also moves for leave to proceed in forma pauperis. Docket 2.

**I.    Motion for Leave to Proceed in Forma Pauperis and for Extension of Time**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute

destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). Proceeding in forma pauperis under § 1915(a)(1) is a privilege granted at the district court's discretion. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987) (citation omitted); *see also Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). Moore's application to proceed in forma pauperis demonstrates that he has insufficient funds to pay the civil filing fee. Docket 2. Thus, Moore's motion for leave to proceed in forma pauperis (Docket 2) is granted.

Moore also filed a motion for extension of time to comply with timing requirements for his subsequent filings on April 21, 2025. Docket 12. But there are currently no pending deadlines in Moore's case. Moore's motion for extension of time (Docket 12) is denied as moot.

The court now screens Moore's complaint under 28 U.S.C. § 1915.

## II.     § 1915 Screening

### A.     Procedural History

Moore filed a complaint on February 24, 2025. Docket 1. Before the complaint was served on defendants, Moore filed an amended complaint. Docket 10. A party may amend its pleading once as a matter of course, no later than 21 days after service. Fed. R. Civ. P. 15(a)(1)(A). Thus, this court will incorporate facts contained within Moore's amended complaint into its analysis.

Moore also filed a Motion for Leave to File Supplemental Pleadings setting out additional facts and arguments concerning the alleged deprivation of rights

2

described above. Docket 15. The Federal Rules of Civil Procedure provide that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Moore's filing appears to be aimed at further clarifying the events *before* February 24, 2025, the date of his first complaint. Docket 15. This court thus construes this filing to be a motion for leave to file a second amended complaint rather than a motion for leave to file a supplemental pleading.

Under the Federal Rules, a party may amend its pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1). All other amendments require leave of the court or the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). The Federal Rules also provide that the court should freely give leave to file a second amended pleading when justice so requires. *Id*; *see also Am. Fam. Mut. Ins. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013) (explaining that leave to amend should be "liberally granted where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced") (citation omitted). Here, none of the defendants in this action have consented to Moore's filing a second amended pleading. But because permitting a second amended pleading will allow Moore to describe his grievances completely and will not prejudice adverse parties, this court will permit it. Thus, Moore's motion for leave to file supplemental pleadings (Docket 15) is granted. This

court incorporates facts described in Moore's second amended pleading into its analysis.

### B.    Factual Allegations

According to Moore's amended complaint, he turned himself in at the Minnehaha County Jail on February 18, 2025, in connection with charges of simple assault. Docket 10 at 4. While there, Moore filled out an application for court–appointed counsel with the Clerk of Courts. *Id.* Moore was experiencing symptoms of severe bipolar disorder, anxiety, and other mental health issues at the time of this application and was unable to adequately represent himself in court. *Id.*  Moore recognized his need for counsel and attempted to contact the Minnehaha County Public Advocate and Public Defender's offices to obtain representation. *Id.*  He did not immediately receive representation following these requests. *Id.*

Over the following week, Moore submitted a letter from his treating physician and a typewritten motion requesting counsel to presiding Second Circuit Judge Robin Houwman. Docket 10 at 5. Moore still did not receive appointed counsel after submitting these materials, and now argues that the resulting need to proceed pro se violated his Sixth Amendment rights. *Id.* When Moore eventually did receive counsel from the court, he also became aware that the alleged victim of his assault—Shawn Goetsch—had been represented by the Minnehaha County Public Defender's Office in various matters for over twenty years. *Id.* at 5–6; *see also* Docket 15–2. Moore alleges that the court's appointment of conflicted counsel violated his Sixth Amendment rights and

4

was pursuant to a "systemic practice of assigning court–appointed counsel without conducting any conflict checks[.]" Docket 15–1 at 3. Judge Houwman is named as a defendant. Docket 10 at 2.

Moore also told South Dakota Second Judicial Circuit Administrator Karl Thoennes that he was concerned about initially proceeding without counsel on February 24, 2025. *Id.* at 5. According to Moore, Thoennes dismissed Moore's concerns about proceeding at his initial appearance without counsel and stated that the appointment of counsel before an initial appearance was rare. *Id.* Moore claims Thoennes's dismissal of his concerns exacerbated his distress and legal vulnerability. *Id.* He names Thoennes as a defendant. *Id.* at 2.

The next day, Moore experienced a panic attack when he was due for an initial appearance. Docket 10 at 2. Deputies at the jail witnessed this event, but the case continued regardless. *Id.* Moore's complaint appears to attribute the case's errantly proceeding to an unofficial policy of Minnehaha County, which he names as a defendant. *Id.*

When Moore became aware that the alleged victim of his assault—Shawn Goetsch—had been represented by the Minnehaha County Public Defender's Office in various matters for over twenty years, he raised his concerns with the public defender's office. *Id.* at 5–6. The office took no steps to withdraw, disclose the conflict, or seek the appointment of alternative counsel. *Id.* at 6. Moore names the supervisor of the Minnehaha County Public Defender's Office—Traci Smith—as a defendant. *Id.* at 3. Moore also names the allegedly

conflicted public defender who was appointed to represent him—Jason
Koistinen—as a defendant. *Id.*

      Moore's second amended pleading also describes the explicit requests
Moore made to Minnehaha County state prosecutors for (1) any evidence
supporting a self-defense claim, (2) Goetsch's criminal history, and (3) any
known credibility or impeachment material against him. Docket 15–1 at 5. The
prosecutors did not furnish this information. *Id.* at 6. Because of this, Moore
now argues that these prosecutors violated their duties under *Brady v.
Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972).
*Id.* He has named as defendants Minnehaha County Deputy State's Attorneys
Nicole Philips, Luke Lawton, Elise Rasmussen, and Minnehaha County State's
Attorney Dan Haggar. Docket 10 at 2.

      It appears that Moore's prosecution was terminated on April 15, 2025, by
an Order of Dismissal that was entered in the Second Judicial Circuit of the
State of South Dakota. *State of South Dakota v. Joshua Michael Moore*, No.
49CRI25-001036.

      Moore does not specify if he is suing defendants in their individual or
official capacities. *See* Docket 10 at 1-4. Moore seeks from defendants,
collectively, (1) declaratory relief that defendants violated his Sixth Amendment
rights; (2) an injunction requiring defendants to appoint counsel at critical
stages of future proceedings; (3) damages for defendants' alleged constitutional
violations; (4) costs and attorney's fees incurred in bringing this case; and (5)
any other relief that this court deems just and proper. Docket 10 at 8. In an

emergency motion filed on February 25, 2025, Moore also requested from the court: (6) intervention into Moore's then–active prosecution to ensure the appointment of unconflicted and qualified counsel; (7) consideration of Moore's case as a potential class action lawsuit; (8) that all discoverable documents related to Moore's case be sent to a Canadian attorney for review as part of a potential refugee claim; and (9) that Moore be relieved from malicious prosecution based on a lack of evidence, unconstitutional delays, and harassment by state authorities. Docket 6 at 3.

### C.   Legal Background

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), it must then determine whether the complaint must be dismissed under 28 U.S.C. § 1915(e)(2)(B). *See Martin–Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss a complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court conducting a screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must

7

contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Id.* (citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations).

### D.    Legal Analysis

Moore alleges deprivations of his constitutional rights by a slate of state and private actors and sues under 42 U.S.C. § 1983. Docket 10; Docket 15 at 1 (clarifying that the cause of action is 42 U.S.C. § 1983). Moore does not specify if he is suing any of the state actor defendants in their individual or official capacities. *See* Docket 10. When a plaintiff does not specifically state in which capacity he sues to the defendants, the court must apply the course of proceedings test. *S.A.A. v. Geisler*, 127 F.4th 1133, 1139 (8th Cir. 2025) (en banc). "[T]he fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.' " *Id.* (quoting *Daskalea v. D.C.*, 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry [in the course of proceedings test] remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.* (quoting *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)). "Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." *Id.* The United States Court of Appeals for the Eighth Circuit has also noted that "[o]ur sister circuits can offer helpful guidance[]" for gauging whether a defendant is sued in his official or unofficial capacity. *Id.* For instance, the Sixth Circuit has considered factors such as the nature of the plaintiff's claims and whether the

complaint alleges that defendant acted in accordance with a government policy or custom. *Goodwin v. Summit Cnty.* 703 F. App'x 379, 382 (6th Cir. 2017); *Biggs*, 66 F.3d at 61. "[N]o single factor is dispositive in an assessment of the course of proceedings." *S.A.A.*, 127 F.4th at 1140 (quoting *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004)).

Here, Moore seeks declaratory judgments, injunctive relief, and damages from all defendants. Docket 10 at 7. He describes a "*systemic* failure to provide counsel" constituting a "pattern of abuse and failure to uphold constitutional protections." *Id.* (emphasis added). Following the Sixth Circuit's approach in *Biggs,* the sweeping and systemic nature of the violations Moore describes can fairly be compared to an official capacity claim against Minnehaha County for its enforcement of an unconstitutional policy. But Moore also describes individual actions by Judge Houwman, Judge Nelson, and Circuit Administrator Thoennes that allegedly deprived him of his Sixth Amendment right to counsel after the right to counsel attached. Docket 10 at 5. Moore does not allege that these actions were pursuant to a policy or custom. Damages for such a claim would more appropriately be brought against defendants in their individual capacities. Thus, the court will construe Moore's claims against all defendants as being brought against them in both their individual and official capacities.

### 1. Claims Against Defendant Public Defenders

Moore complains that Traci Smith and Jason Koistinen—both employees of the Minnehaha County Public Defender's Office—violated his Sixth

Amendment right to effective assistance of counsel because attorneys from the office had represented the alleged victim of Moore's simple assault in various matters for over twenty years. Docket 10 at 5-6. Moore alleges that the entire public defender's office is thus conflicted in representing him, and any attorney appointed to his case would have the office's conflicts imputed to him or her. *Id.* This includes his appointed attorney, Jason Koistinen. *See* Docket 10 at 5-6. But the Eighth Circuit has recognized that public defenders operate as private actors, not state actors. *See White v. Rogers*, 221 F.3d 1346 (Table) (8th Cir. 2000) (per curiam); *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (explaining that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"). Because Traci Smith and Jason Koistinen are not state actors, Moore's § 1983 claims against Smith and Koistinen are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)..

### 2.    Claims Against Defendant Judges

Judges are generally immune from suits for damages if the judge had jurisdiction over the case. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time [she] took the challenged action [she] had jurisdiction over the subject matter before [her]."). "A judge will not be deprived of immunity because the action [she] took was in error, was done maliciously, or was in excess of [her] authority; rather, [she] will be subject to liability only when [she] has acted in the 'clear absence of all jurisdiction.' " *Id.* at 356–57

11

(footnote omitted) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). There are only two narrow exceptions to this judicial immunity: "[f]irst, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *See Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) (citation omitted).

Section 1983 also states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. "[J]udicial immunity typically bars claims for prospective injunctive relief against judicial officials acting in their judicial capacity. Only when a declaratory decree is violated or declaratory relief is unavailable would plaintiffs have an end–run around judicial immunity." *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) (citation omitted).

Moore argues that judicial immunity is not available to judges here because they "implemented and enforced a systemic practice of assigning court–appointed counsel[.]" Docket 15–1 at 3. He cites *Forrester v. White*, 484 U.S. 219, 229 (1988) in support of this proposition, which held that actions taken by judges in an administrative or executive capacity are not protected by judicial immunity. Docket 15–1 at 3; *see also Forrester*, 484 U.S. at 229 (holding that a judge who demoted and discharged an employee was acting outside of his judicial capacity in doing so and thus was not entitled to

immunity). Thus, Moore argues that defendant judges remain subject to liability under § 1983. Docket 15-1 at 4.

Moore's invocation of *Forrester* is misplaced. It is true that *Forrester* recognized "an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform[,]" and that judges do not enjoy absolute immunity for these latter functions. *Forrester*, 484 U.S. at 227–29. But Moore is incorrect to characterize the alleged conspiracy by Judge Houwman and Magistrate Judge Nelson to deprive him of his constitutional rights as an action taken in an administrative or executive capacity. "Administrative" in the context of *Forrester* referred to a judge's non–adjudicative role as a government *employer* whose discriminatory employment decisions were subject to the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 220-21. By contrast, a policy to deny defendants their Sixth Amendment rights is a policy of *adjudicative* decision–making, not an administrative one. Thus, Judge Houwman and Magistrate Judge Nelson remain entitled to judicial immunity.

### a.    Individual Capacity Claims

Here, Moore describes Judge Houwman and Magistrate Judge Nelson as directly presiding over Moore's prosecution. Docket 10 at 4, 6. Moore has not alleged that either judge acted in the "clear absence of all jurisdiction," nor that a declaratory decree was violated, nor that declaratory relief was unavailable. *See Stump*, 435 U.S. at 356-57 (1978) (explaining that judges are only deprived of immunity when they act in the "clear absence of all jurisdiction"). Judge

13

Houwman and Magistrate Judge Nelson[1] are thus entitled to judicial immunity against any damages sought from them in their individual capacities.

### b.    Official Capacity Claims

The Eleventh Amendment bars any recovery from the State of South Dakota on account of actions taken by Judge Houwman or Judge Nelson in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, such suits against state officials in their official capacities are suits against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a *State* for alleged deprivations of civil liberties." *Id.* at 66 (emphasis added). The state must waive its sovereign immunity for monetary remedies to become available. *Id.* The state of South Dakota has not waived its sovereign immunity. Thus, Moore's claims against Judge Houwman and Magistrate Judge Nelson in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii).

---

[1] Magistrate Judge Nelson is a magistrate judge and Judge Houwman is a presiding circuit court judge. The Eighth Circuit has never held that this distinction makes a difference for immunity purposes, and other circuits have explicitly stated that it does not. *See Tanner v. Heise*, 879 F.2d 572, 576–78 (9th Cir. 1989); *Ryan v. Bilby*, 764 F.2d 1325, 1328 n.4 (9th Cir. 1985).

Moore also requests injunctive relief against Judge Houwman and Magistrate Judge Nelson, which this court construes to be an official capacity claim against the state of South Dakota. Docket 10 at 7; *see supra* Section II.B.2.b (discussing the course of proceedings test). This request survives Eleventh Amendment analysis but encounters other issues. The Supreme Court has never "had a rule of absolute judicial immunity from prospective relief" and "[n]o Court of Appeals ever has concluded that immunity bars relief against a judge." *Pulliam v. Allen*, 466 U.S. 522, 536–37 (1984). But here, the injunction Moore seeks is an "injunction requiring the appointment of counsel at critical stages of future proceedings." Docket 10 at 8. Moore's prosecution for criminal assault was terminated on April 15, 2025. The Order of Dismissal was filed in the Second Judicial Circuit of the State of South Dakota. *State of South Dakota v. Joshua Michael Moore*, No. 49CRI25-001036. This termination means that disposition of Moore's request for an injunction would have no bearing on his rights because there will be no further proceedings in which those rights could be infringed. Moore's requests for injunctive relief are thus mooted by the case's termination. *See DeFunis v. Odegaard,* 416 U.S. 312, 317 (1974) (per curiam). And Moore's claims for declaratory relief are also dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii), because requests for declaratory judgment are not free of Article III's requirement of a still–existing case or controversy. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (explaining that the inquiry for determining whether a requested declaratory judgment is moot is "whether the facts alleged, under all the circumstances,

15

show that there is a substantial controversy . . . of sufficient immediacy and
reality to warrant the issuance of a declaratory judgment").

### 3.    Claims Against Karl Thoennes

Moore's complaint names Minnehaha County Second Judicial Circuit
Administrator Karl Thoennes as a defendant in both his individual and official
capacities. Docket 10 at 2. He argues that Thoennes is not entitled to the
protections of qualified immunity, citing his assignment of conflicted counsel
as a violation of clearly established right about which a reasonable person
would have known. Docket 15–1 at 4.

### a.    Individual Capacity Claims

Absolute judicial immunity extends to state officials other than judges
who perform quasi–judicial functions through the doctrine of quasi–judicial
immunity. "This doctrine extends judicial immunity 'to officials other than
judges . . . because their judgments are functionally comparable to those of
judges—that is, because they, too, exercise a discretionary judgment as a part
of their function.' " *Hamilton v. City of Hayti, Mo.*, 948 F.3d 921, 928 (8th Cir.
2020) (quoting *Antoine v. Byers & Anderson, Inc.*, 58 U.S. 429, 436 (1993)). The
Eighth Circuit has extended quasi–judicial immunity to state employees—such
as court clerks or bailiffs—performing acts that are "integral parts of the
criminal justice process." *Id.* at 921 (citing *Boyer v. Cty. of Washington*, 971
F.2d 100, 102 (8th Cir. 1992)). This is a different standard of immunity than
qualified immunity, to which Moore argues Thoennes is not entitled. Docket
15-1 at 4.

16

Here, Thoennes is a judicial circuit court administrator to whom Moore attributes the Minnehaha County court's failure to appoint counsel before his initial appearance. Docket 10 at 5. If the task of appointing counsel was truly delegated to Thoennes by the court—as it must be for there to be causation between Thoennes's actions and Moore's harm—then performance of this duty is a quasi–judicial function under the Eighth Circuit's guidance in *Hamilton*. Because of this quasi–judicial function, circuit administrators like Thoennes fall into the bucket of defendants entitled to quasi–judicial immunity rather than qualified immunity, as Moore argues. *See* Docket 15-1 at 1. Thus, defendant Thoennes is entitled to quasi–judicial immunity against claims based on his actions of allegedly appointing conflicted counsel.

For immunity purposes, it is immaterial if Moore is correct that he did not receive counsel past the moment when his Sixth Amendment rights attached. As the Eighth Circuit has explained, "quasi–judicial immunity would afford only illusory protection if it were lost the moment an officer acted improperly." *Martin v. Hendren*, 127 F.3d 720, 722 (8th Cir. 1997). The proper remedy for such an error by the Minnehaha County court is to appeal, not to file a lawsuit against court officials. Moore's claims against Karl Thoennes in his individual capacity are thus dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii).

**b.    Official Capacity Claims**

Suits against state officials in their official capacity are effectively suits against the state itself. *See supra* Section II.C.1.b. Thus, the Eleventh

17

Amendment bars any claim for monetary relief from Thoennes in his official capacity.

Moore also seeks declaratory and injunctive relief. Docket 10 at 7. But requests for these forms of relief are no less subject to the requirement of timeliness to be justiciable by this court than are requests for monetary relief. *Md. Cas.*, 312 U.S. at 273. Because Moore's prosecution has been terminated, prospective and declaratory forms of relief would have no bearing on his rights because there will be no further opportunities for Thoennes to deny Moore his Sixth Amendment rights.[2] *See DeFunis*, 416 U.S. at 317. Thus, Moore's claims for injunctive and declaratory relief are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4.    Claims Against Minnehaha County

Moore brings claims against Minnehaha County itself, presumably for promulgating its alleged policy or systemic practice of denying criminal defendants their Sixth Amendment rights. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."

---

[2] The Supreme Court has repeatedly recognized that voluntary cessation of illegal activity does not render a suit to enjoin that activity moot. *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953); *United States v. Trans–Missouri Freight Assn.*, 166 U.S. 290, 308–10 (1897). But here, Moore's case was terminated entirely. This is not the same thing as voluntary cessation of the alleged "systemic" issue of Minnehaha County courts denying criminal defendants their Sixth Amendment rights. And even if that were the case, this is not a situation where defendants would be "free to return to [their] old ways" after the conclusion of Moore's case, because Moore has presumably been entirely freed from legal jeopardy. *See DeFunis*, 416 U.S. at 318. Thus, the mootness exception does not apply.

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). A county government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Id.* Again, bare allegations of such a policy or a characterization of an individual instance of a rights deprivation as "systemic" are not adequate to support an inference that such a policy or custom actually exists. "At a minimum, a complaint must allege *facts* which would support the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. Of City of Norfolk,* 340 F.3d at 605, 614 (8th Cir. 2003) (emphasis added). Moore has not pleaded facts sufficient to support an inference that an unconstitutional policy or custom exists. Thus, Moore's claims against Minnehaha County are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5.    Claims Against Defendant Prosecutors

Moore's complaint names Minnehaha County Deputy State's Attorneys Nicole Phillips, Luke Lawton, Elise Rasmussen, and Minnehaha County State's Attorney Dan Haggar as defendants.

### a.    Individual Capacity Claims

State prosecutors are absolutely immune from § 1983 actions when performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). "Immunity is not defeated by allegations of malice, vindictiveness, or self–interest." *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 580 (8th Cir. 2006) (citation

omitted). This immunity is a tall hurdle to clear because § 1983 plaintiffs must demonstrate that prosecutor defendants' alleged conduct fell outside their prosecutorial duties. Critically, the Eighth Circuit has held that a prosecutor's failure to comply with his or her *Brady* obligations does not take their conduct outside of the scope of official immunity. "[I]t is clear that a prosecutor has absolute immunity from a damages claim under § 1983 for a *Brady* violation." *Aguilera v. Wright Cty., Iowa*, 50 F. Supp. 3d 1057, 1066 (N.D. Iowa 2014); *see also Reasonover*, 447 F.3d at 580 ("Even if [the defendant] knowingly presented false, misleading, or perjured testimony, or even if he withheld or suppressed exculpatory evidence, he is absolutely immune from suit."); *Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir.2004) ("When acting in [a prosecutorial role], the prosecutor has absolute immunity from *Brady* damage claims under § 1983." (citing *Imbler*, 424 U.S. at 431 n.34)). Moore's complaint describes a series of *Brady* and *Gilgio* violations as the sole bases for his claims against defendant prosecutors. Docket 15 at 2. Each of these is barred by absolute immunity under *Imbler*. Thus, Moore's claims against Philips, Rasmussen, Lawton, and Haggar are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

Moore's request for injunctive relief from the Minnehaha County State's Attorney Defendants in their individual capacities also fails. "Section 1983 plaintiffs may sue individual–capacity defendants only for money damages and official–capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *see also Cmty. Mental Health Servs. v.*

*Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.,* his official capacity."). Therefore, Moore's request for injunctive relief against the Minnehaha County State's Attorney defendants in their individual capacities is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### b.     Official Capacity Claims

Moore's official capacity claims against the Minnehaha County State's Attorney defendants are claims against their employer, Minnehaha County. *See supra* Section II.4. These claims fail for the same reasons that his claims against Minnehaha County fail. Thus, Moore's claims against the Minnehaha County State's Attorney defendants are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6.     Other Requests

Moore's second amended pleading contains several other requests for relief.

### a.     Request for Intervention and Relief from Malicious Prosecution

Moore has asked this court to intervene into his prosecution to ensure the appointment of unconflicted and qualified counsel and to relieve him from the state's allegedly malicious prosecution. Docket 6 at 2–4. Moore's prosecution was terminated by Order of Dismissal filed in the Second Judicial

21

Circuit of the State of South Dakota. *State of South Dakota v. Joshua Michael Moore*, No. 49CRI25-001036. As this court explained *supra* Section II.B.2.b, requests for relief that would have no bearing on a complainant's rights must be dismissed as moot. *See Defunis*, 416 U.S. at 317. This court cannot appoint counsel in or relieve Moore from a prosecution that no longer exists. Thus, Moore's motions for intervention and relief from malicious prosecution (Docket 6) are dismissed as moot.

### b.  Request for Consideration as a Class Action Lawsuit

Moore has asked this court to consider his "motion as a potential class action lawsuit, where other defendants are similarly harmed by systemic violations of the Sixth Amendment and failure to appoint counsel." Docket 6 at 3. But under 28 U.S.C. § 1654, while "a pro se plaintiff may file their own cases in federal court . . . a pro se plaintiff cannot bring claims on behalf of others." *Bear v. Wickre*, 2025 WL 868955  at *10 (D.S.D. Mar. 20, 2025) (*quoting Johnson v. Precythe*, 2019 WL 931925, at *1 (E.D. Mo. Feb. 26, 2019)). Proceeding on behalf of a class of plaintiffs necessarily involves bringing claims on behalf of others. Thus, Moore's request to have his case considered as a class action lawsuit is denied.

### c.  Request for Referral to a Foreign Attorney as Part of a Refugee Claim

Moore has asked this court to send all relevant case materials to a Canadian attorney for consideration as part of a potential refugee claim due to the alleged malicious prosecution and harassment against him. Docket 6 at 4.

22

It is not this court's place to seek foreign attorneys to assist parties before it in potential refugee claims from the United States. Moreover, the prosecution Moore seeks to flee from has been terminated. *See supra* Section II.D.6.a. Thus, this court denies this request.

Thus, it is ORDERED:

1.    That Moore's motion for leave to proceed in forma pauperis (Docket 2) is granted.

2.    That Moore's Motion for Leave to File a Supplemental Pleading (Docket 15) under Fed. R. Civ. P. 15(d) is granted.

3.    That Moore's emergency motion for Appointment of Counsel, Assertion of Immunity, Objection to Unconstitutional Proceedings, and Request for Class Action consideration (Docket 6) is dismissed in its entirety.

4.    That Moore's Notice and Motion for Extension of Time (Docket 12) is denied as moot.

5.    That Moore's claims against Judge Houwman in her individual capacity are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii–iii).

6.    That Moore's claims against Magistrate Judge Nelson in her individual capacity are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii–iii).

7.    That Moore's claims against Traci Smith are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

8.    That Moore's claims against Jason Koistinen are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

9.    That Moore's claims against Nicole Philips, Dan Haggar, Luke Lawton, and Elise Rasmussen in their individual capacities are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii-iii).

10.   That Moore's claims against Minnehaha County, as well as Judge Houwman, Magistrate Judge Nelson, Karl Thoennes, Nicole Philips, Luke Lawton, Elise Rasmussen, and Dan Hagger in their official capacities, are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

Dated September 9, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE